1

2

3

4

5                      UNITED STATES DISTRICT COURT

6                      EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7  NETWORK OF CONSTRUCTION<br>   and DEVELOPMENT, an Afghanistan<br>8  joint venture company, d/b/a N-CDC, | NO:  CV-11-269-RMP |
| 9                            Plaintiff, | ORDER GRANTING DEFENDANT'S<br>MOTION TO STRIKE AND MOTION<br>TO DISMISS |
| 10    v. | |
| 11  BESSAMAIRE SALES, LLC, an Ohio<br>   limited liability company, | |
| 12 | |
| 13                          Defendant. | |

14          This matter comes before the Court on a motion to dismiss, ECF No. 4, and

15  a motion to strike, ECF No. 15, by Defendant Bessamaire Sales International, LLC

16  ("Bessamaire").  Bessamaire seeks to dismiss a breach of contract action by

17  Plaintiff Network of Construction and Development Companies ("N-CDC") for

18  lack of personal jurisdiction and improper venue.  Alternatively, Bessamaire

19  suggests that the case be transferred to the U.S. District Court for the Northern

20  District of Ohio.  Further, Bessamaire seeks to strike statements made by N-CDC

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION
TO DISMISS ~ 1

pursuant to Federal Rule of Evidence 408.  ECF No. 15.  Both motions are without oral argument.  ECF Nos. 4 & 15.

N-CDC is a joint venture company established in Afghanistan, with its headquarters in Kabul, Afghanistan.  ECF No. 1 at 2.  Bessamaire is an Ohio Limited Liability Company.

## BACKGROUND

N-CDC contracted with the United States Army Corps of Engineers to provide heating, ventilation, and air conditioning ("HVAC") units in Afghanistan for housing facilities to be used by Afghan soldiers training with the United States military.  ECF No. 8 at 4.  On October 16, 2008, N-CDC terminated its contract with Bessamaire.  ECF No. 8 at 6.  At the time of termination, neither party fulfilled its contractual obligations.  On July 21, 2011, N-CDC brought a breach of contract action against Bessamaire.  ECF No. 1.  Bessamaire seeks dismissal of the case based on lack of personal jurisdiction under Rule 12(b)(2), or dismissal of the case based on improper venue under Rule 12(b)(3).  Alternatively, Bessamaire seeks a change of venue under 28 U.S.C. § 1404(a).  ECF No. 4.  Bessamaire also seeks to strike three statements made by N-CDC, contained in ECF Nos. 9, 10, and 12, based on Federal Rule of Evidence 408.  ECF No. 15.

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 2

1

## **MOTION TO STRIKE**

2    As a preliminary matter, the Court addresses the motion to strike, ECF No.

3    15.  Bessamaire asserts that certain statements made by N-CDC should be stricken

4    pursuant to Federal Rule of Evidence 408.  ECF No. 15 at 2.  These disputed

5    statements are:

6    (1) The portion of N-CDC's Response to Bessamaire's Motion to
     Dismiss or Transfer Action extending from page 9, line 12, to page
7    11, line 11 (ECF No. 9);
      (2) Paragraph 4 of the Declaration of Amos R. Hunter in Opposition
8    to Bessamaire's Motion to Dismiss Action or Transfer Action (ECF
     No. 10);  and
9    (3) Paragraph 5 of Declaration of Najibullah Akrami in Opposition to
     Bessamaire's Motion to Dismiss Action or Transfer Action (ECF No.
10   12).

11   ECF No. 15 at 2.  Bessamaire seeks to strike these statements on the basis that they

12   each violate Federal Rule of Evidence 408, arguing that the statements were "made

13   in compromise negotiations," and thus are inadmissible.  ECF No. 15 at 2; Fed. R.

14   Evid. 408.

15    Rule 408 provides in relevant part: "evidence of: (1) furnishing or offering

16   or promising to furnish — or accepting or offering or promising to accept — a

17   valuable consideration in compromising or attempting to compromise the claim;

18   and (2) conduct or statements made in compromise negotiations regarding the

19   claim." Fed. R. Evid. 408.  The purpose of Rule 408 is to "protect the

20   confidentiality of settlement negotiations." *McCown v. City of Fontana*, 565 F.3d

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION
TO DISMISS ~ 3

1097, 1105 (9th Cir. 2009).  The primary focus in determining admissibility of the statements is the underlying dispute, i.e., whether the statements were "made in pursuit of a compromise" and "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount."  Fed. R. Evid. 408; *see Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007).

In the present case, the first disputed statement contains e-mails from N-CDC's counsel, Amos Hunter, to Bessamaire executive, William Sullivan.  ECF No. 9 at 9-11.  The next disputed statement also includes settlement e-mails between Mr. Hunter, Plaintiff's counsel, and Mr. Sullivan, a Bessamaire executive.  ECF No. 10 at 2-3.  The final disputed statement is from N-CDC's Managing Director, Najibulla Akrami, allegedly referring to offers of settlement.  ECF No. 12 at 2-3.

Bessamaire argues that the statements are inadmissible because they "are simply a reprinting of emails [sic] that went back and forth between plaintiff's counsel and Mr. Sullivan during those initial negotiations."  ECF No. 16 at 2.  Those e-mails, Bessamaire contends, were efforts by N-CDC to reach a settlement with Bessamaire and to recount the content of voicemail messages left by Mr. Sullivan.  ECF No. 9 at 9-11.  Further, Bessamaire argues that "the subject line of those emails actually declares that the discussions are protected by ER 408."  ECF No. 16 at 2.  Defendant argues that the statements illustrate Mr. Hunter's intent to

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 4

settle the dispute and thus the statements are inadmissible under Fed. R. Evid. 408. ECF No. 16 at 2.

N-CDC, on the other hand, argues that the statements are admissible because they are used to prove proper venue rather than to show offers to settle. ECF No. 21 at 2. N-CDC seeks to use the e-mails to show that Bessamaire was aware of N-CDC's intent to file suit in the Eastern District of Washington. ECF No. 21 at 3.

The disputed statements appear to be offered to prove liability because the underlying purpose of the e-mail correspondence was to settle the breach of contract prior to litigation. In these emails, Mr. Hunter refers to: (1) the amount for which he is authorized to settle the case; (2) the window of time in which the offer may be accepted or rejected; and (3) the voice message rejecting the offer. ECF No. 9 at 9-11. These statements are offers to compromise under Rule 408 and thus are inadmissible.

Further, N-CDC's contention that the statements are used to prove venue is without merit. ECF No. 21 at 2. Mr. Hunter and Mr. Akrami do not refer to this District, or any other venue issue for that matter, in any of the disputed statements. The only reference to this District is Mr. Hunter's mailing address in his e-mail signature block. ECF No. 9 at 9-11. Therefore, the Court grants Defendant's motion to strike, ECF No. 15, and will consider these statements inadmissible under Rule 408(b).

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 5

**MOTION TO DISMISS**

Bessamaire filed a motion seeking dismissal based on lack of personal jurisdiction under Rule 12(b)(2), and dismissal based on improper venue under Rule 12(b)(3), or, alternatively, change of venue under 28 U.S.C. § 1404(a).  ECF No. 4.

**Dismissal Under Fed. R. Civ. P. 12(b)(2)**

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Maverix Photo, Inc. v. Branch Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  "Where . . . the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.*  "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  A court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," but factual disputes are resolved in the plaintiff's favor.  *Id.*

Where "no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Maverix Photo*, 647 F.3d at

1223.  Washington's long-arm statute provides for personal jurisdiction arising

from "any transaction within the state."  RCW 4.28.185(1)(a).

Jurisdiction must meet constitutional requirements imposed by due process.

"For a court to exercise personal jurisdiction over a nonresident defendant

consistent with due process, that defendant must have 'certain minimum contacts'

with the relevant forum 'such that maintenance of the suit does not offend

"traditional notions of fair play and substantial justice."'"  *Maverix Photo*, 647

F.3d at 1223 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)

(quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))).

Ultimately, the question is whether this Court has sufficient personal

jurisdiction over Bessamaire in the current Washington action to allow this Court

to preside over N-CDC's claims.  *See Mattel, Inc. v. Greiner and Hausser GMBH*,

354 F.3d 857, 862-63 (9th Cir. 2003).

_General Jurisdiction_

"'A court may assert general jurisdiction over foreign . . . corporations to

hear any and all claims against them when their affiliations with the State are so

"continuous and systematic" as to render them essentially at home in the forum

state.'"  *Maverix Photo*, 647 F.3d at 1223 (quoting *Goodyear Dunlop Tires*

*operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  "For general jurisdiction

to exist, a defendant must engage in 'continuous and systematic general business

contacts.'" *Id.* (quoting *Helicopteros Nationales de Columbia S.A. v. Hall*, 466 U.S. 408, 415 (1984)).  "The standard for general jurisdiction is [fairly] high. . . ." *King v. American Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir.2006)) (internal quotations omitted).  When determining whether a defendant has sufficient contacts with the forum, factors such as its "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets" should be considered.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) (quoting *Tuazon,* 433 F.3d at 1172) (internal quotations omitted).

Bessamaire argues that this Court lacks general jurisdiction because Bessamaire is not an entity registered in Washington State, nor does it have a personal agent in Washington State.  ECF No. 16 at 7.  Additionally, Bessamaire asserts that it does not have any "contacts with the state of a sort that would approximate physical presence."  ECF No. 5 at 7.  Further, Bessamaire contends that it does not "engage in commerce with Washington residents [in] a substantial, systematic, or continuous nature."  ECF No. 5 at 7.

N-CDC argues that this Court has general jurisdiction over Bessamaire because of its previous contract with a party unrelated to this litigation, McKinstry Northwest ("McKinstry").  ECF No. 9 at 3-8.  Bessamaire's contract with

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 8

1   McKinstry led to litigation in the Northern District of Ohio.  ECF No. 9 at 2.  N-

2   CDC asserts that the McKinstry contract is substantial enough for this Court to

3   exercise general jurisdiction over Bessamaire because actions in that case arose in

4   Spokane, Washington.[1]  ECF No. 9 at 3-4.

5          However, Bessamaire does not have "offices or staff in [Washington], is not

6   registered to do business in the state, and has no registered agent for service of

7   process."  *Maverix Photo*, 647 F.3d at 1225; *see* ECF No. 5 at 7.  Additionally, one

8   transaction within the forum does not equate to "continuous and systematic

9   contacts" availing a defendant of the forum for purposes of general jurisdiction.

10  *See CollegeSource*, 653 F.3d at 1074 (misappropriation over "a few discrete acts

11  over a relatively short period of time" did not constitute "'continuous and

12  systematic' forum activity"); *Int'l Shoe Co.*, 326 U.S. at 317 ("conduct of single or

---

13  [1] N-CDC argued that the instant case should be deferred until the Northern District

14  of Ohio decided on a motion to transfer venue to the Eastern District of

15  Washington.  N-CDC contended that should the Northern District of Ohio district

16  court transfer the McKinstry case, then this Court would be an appropriate venue

17  because Bessamaire would be required to appear in this jurisdiction.  ECF No. 9 at

18  4.  However, that case ultimately settled out of court and has been dismissed with

19  prejudice.  *Bessamaire Sales, Inc. v. McKinstry Co., LLC*, Case No. CV-11-2367

20  (N.D. Ohio filed Feb. 8, 2012) (ECF No. 6 stipulated dismissal entry).

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 9

isolated items of activities in a state . . . are not enough to subject it to suit on causes of action unconnected with the activities there"). Further, the act of maintaining a website alone does not confer general jurisdiction. *Maverix Photo*, 647 F.3d at 1226-27. Thus, Bessamaire's McKinstry contract does not provide this Court with general jurisdiction over Bessamaire.

This Court lacks general jurisdiction over Bessamaire.

*Specific Jurisdiction*

In the absence of general jurisdiction, the Court may still adjudicate a case under specific jurisdiction. Specific jurisdiction is analyzed pursuant to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Maverix Photo*, 647 F.3d at 1227-28 (quoting *Schwarzenegger*, 374 F.3d at 802). The Plaintiff bears the burden of establishing the first two prongs. *Id.* at 1228. If the Plaintiff satisfies the first two prongs, the burden shifts to the Defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 10

1    Purposeful Availment

2        The first prong refers to both "purposeful direction" and "purposeful

3    availment." *Maverix Photo*, 647 F.3d at 1227-28.  "As a general rule, the exercise

4    of judicial power is not lawful unless the defendant 'purposefully avails itself of

5    the privilege of conducting activities within the forum State, thus invoking the

6    benefits and protections of its laws.'" *CollegeSource*, 653 F.3d at 1077 (citing

7    *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

8        The Ninth Circuit applies different approaches to torts and contract cases.

9    *Schwarzenegger*, 374 F.3d at 802-03.  In torts cases, the Ninth Circuit considers

10   the defendant's conduct outside of the forum state by asking "whether a defendant

11   'purposefully direct[s] his activities' at the forum state" and applying an "effects"

12   test.  *Maverix Photo*, 647 F.3d at 1227-28 (quoting *Yahoo! Inc. v. La Ligue Contre*

13   *Le Racismeet L'Antisemitisme*, 433 F.3d 1199, 1203 (9th Cir. 2006)) (internal

14   quotations omitted); *see also Schwarzenegger*, 374 F.3d at 802.  In contract cases,

15   on the other hand, the Ninth Circuit focuses on the activities of the defendant

16   within the forum state and "inquire[s] whether a defendant 'purposefully avails

17   itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in

18   the forum." *Yahoo!*, 433 F.3d at 1203 (citing Schwarzenegger, 374 F.3d at 802).

19   Therefore, in torts cases, the Ninth Circuit generally utilizes a "purposeful

20   direction" test, while the "purposeful availment" standard is typically used in

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION
TO DISMISS ~ 11

1    contract cases.  *Schwarzenegger*, 374 F.3d at 802-03.  Thus, the "purposeful

2    availment" standard applies here because this is a contracts case.

3          Under the "purposeful availment" test, the court typically looks "to evidence

4    of the defendant's actions in the forum, such as executing or performing a contract

5    there."  *Schwarzenegger*, 374 F.3d at 802.  "By taking such actions, a defendant

6    'purposefully avails itself of the privilege of conducting activities within the forum

7    State, thus invoking the benefits and protections of its laws."  *Id.* (quoting *Hanson*

8    *v. Denckla*, 357 U.S. 235, 253 (1958)).

9          Bessamaire had previously availed itself of the forum when it commenced

10   its contract with McKinstry.  However, that contract is not at issue in this case.  At

11   no moment in the formation or performance of the contract between N-CDC and

12   Bessamaire did any action occur in Washington.  ECF No. 5 at 8.  Neither party

13   regularly conducts business in Washington.  ECF No. 13 at 4; ECF No. 16 at 7.

14   Neither party has an agent within Washington State.  ECF No. 13 at 4; ECF No. 16

15   at 7.

16         The contract between N-CDC and Bessamaire did not arise from "any

17   transaction within the state."  RCW 4.28.185(1)(c).  The contract was formed

18   outside of Washington State.  ECF No. 5 at 8.  The performance of the contract

19   was to take place in Afghanistan.  ECF No. 8 at 4.  None of the negotiations

20   occurred in this forum.  The only link to this forum is Mr. Hunter's practice and

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION
TO DISMISS ~ 12

residence in Spokane.  ECF No. 10 at 2.  Therefore, there is not a sufficient basis to find purposeful availment.

<u>Relationship Between Claim and the Forum-Related Activities</u>

The second prong "asks whether the claim arises out of or results from the Defendants' forum-related activities.  [The Ninth Circuit] use[s] a 'but for' test to conduct this analysis."  *Mattel*, 354 F.3d at 864 (citing *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd*, 328 F.3d 1122, 1131-32 (9th Cir. 2003)).  In *Mattel*, the "but for" question posed was "But for G&H's contacts with California would Mattel's claims against G&H have arisen?"  *Id.*

In this case, the "but for" test can be phrased as: "But for Bessamaire's contacts with Washington, would N-CDC's claims against Bessamaire have arisen?"  The Court finds that, indeed, N-CDC could have asserted the same claims against Bessamaire even if Bessamaire did not contract with McKinstry.  N-CDC's alleged claim does not rely on a contract and breach occurring in Washington.  The contract was formed outside of Washington State.  ECF No. 5 at 8.  The performance of the contract was to take place in Afghanistan.  ECF No. 8 at 4.  Thus, the claim does not have any forum-related activities, and this prong is not satisfied.

///

///

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 13

Reasonableness

The third and final prong asks whether the forum is reasonable.  *Mattel*, 354 F.3d at 866.  There are seven factors that should be considered when determining the reasonableness element of personal jurisdiction:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Mattel,* 354 F.3d at 866-67 (citing *Harris Rutsky*, 328 F.3d at 1132).  Each factor should be balanced and no one factor is dispositive.  *Id.*

1.    *Defendant's interjection into Washington*

Bessamaire contracted in Washington State with McKinstry in 2010.  However, that contract is completely unrelated to this suit.  Therefore, this factor does not support the conclusion that jurisdiction is reasonable in this forum.

2.    *The burden of defending in Washington*

Bessamaire is an Ohio Limited Liability Company.  Before the Court is evidence of only one contract in Washington State in an unrelated matter, McKinstry.  Bessamaire does not have any representatives in Washington.  ECF No. 6 at 9.  No events relating to the underlying action occurred in Washington.  ECF No. 5 at 8; ECF No. 8 at 4.  As such, Bessamaire's burden of defending this

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 14

1  claim in Washington is great, making it unreasonable for this Court to retain

2  jurisdiction.

3      *3.    Conflict with the sovereignty of the Defendant's state*

4      When exercising personal jurisdiction over a citizen of a foreign sovereign

5  nation, greater caution should be taken, as compared to litigation between citizens

6  of sister states in the U.S., because "important sovereignty concerns exist."

7  *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988); *see also*

8  *Yahoo!*, 379 F.3d at 1137.

9      For example, in *Mattel*, 354 F.3d at 867, the Ninth Circuit was concerned

10  that the decision to exercise jurisdiction might offend German sovereignty.  The

11  plaintiff in that matter was a U.S. toy manufacturer, while the defendant was a

12  German toy manufacturer.  *Id.* at 859.  In deciding the conflict with sovereignty

13  factor, the Ninth Circuit considered possible interference with pending German

14  lawsuits related to the matter and did not want to "undermine the integrity of the

15  German courts."  *Id.*

16      In this matter, Plaintiff N-CDC is a foreign citizen as it is an Afghan joint

17  venture company, while the Defendant Bessamaire is an Ohio limited liability

18  company.  Thus, Bessamaire is not a foreign defendant for purposes of this factor,

19  and this factor does not make Washington any more or less reasonable as a forum.

20  ///

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION
TO DISMISS ~ 15

4.    *Washington's interest in adjudicating the dispute*

The underlying contract in this case did not commence in Washington. Performance under the contract was not to take place in Washington. ECF No. 8 at 4. Rather, performance was to take place in Afghanistan. ECF No. 8 at 4. Neither party resides nor has a principal place of business in Washington. ECF No. 13 at 4; ECF No. 16 at 7. Therefore, Washington State has no interest in adjudicating this dispute and this factor does not support the conclusion that jurisdiction is reasonable in this forum.

5.    *The most efficient judicial resolution*

The most efficient judicial resolution is typically analyzed by comparing alternative forums. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 927-28 (9th Cir. 2011). In so comparing, the Ninth Circuit looks to "where the witnesses and evidence are located in order to determine the most efficient forum." *Id.* (citing *Core-Vent Corp. v. Nobel Industries AB*, 11F.3d 1482, 1489 (9th Cir. 1993)).

Here, that forum is not the Eastern District of Washington, but rather most likely the Northern District of Ohio. The witnesses likely to be called to testify in this case would most likely reside in Ohio. ECF No. 5 at 10-11. Also, any files that may be produced as evidence would be contained in Ohio, according to the address provided by Bessamaire on its invoices to N-CDC. ECF No. 8 at 11, 13, & 15. Therefore, this factor weighs against the reasonableness of this forum.

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 16

1      6.    *The importance of the forum to N-CDC's interests*

2           N-CDC appears to have retained counsel and filed suit in the Eastern District

3      of Washington due to the possibility that the McKinstry case would be transferred

4      to this forum.  ECF No. 12 at 2.  However, since the instant suit commenced, the

5      McKinstry case has settled and has been dismissed with prejudice.[2]  Outside of the

6      fact that N-CDC's retained counsel is in Spokane, N-CDC does not have any ties

7      to the state of Washington, let alone the Eastern District of Washington.  Because

8      N-CDC does not reside or have a place of business in the Eastern District of

9      Washington, ECF No. 13 at 4, this forum is an unreasonable venue.

10          7.    *The existence of an alternative forum*

11          Bessamaire proposed transferring this case to the Northern District of Ohio

12     as an alternative to dismissal for the case.  The Northern District of Ohio would

13     serve as a better forum for this action because it would be more convenient for the

14     parties and all possible witnesses.  ECF No. 5 at 10-11.  Ohio would have more

15     interest in this case than Washington because Bessamaire is a registered limited

16     liability company of Ohio.  Further, any records relating to this contract would

17     likely be stored in Ohio, as evidenced by the address provided on Bessamaire's

18
       _____

19     [2] *Bessamaire Sales, Inc. v. McKinstry Co., LLC*, Case No. CV-11-2367 (N. D.

20     Ohio filed Feb. 8, 2012) (ECF No. 6 stipulated dismissal entry).

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION
TO DISMISS ~ 17

receipts to N-CDC's payments.  ECF No. 8 at 11, 13, & 15.  The Court notes, without deciding the change of venue issue, that these factors support the Northern District of Ohio as being a more reasonable forum for this action than the Eastern District of Washington.

In totality, these seven factors weigh heavily against this Court's exercising specific jurisdiction over Bessamaire.  Further, it is even less  reasonable to "hale two [entities] with no contacts or *de minimis* contacts into a forum, regardless of who their counsel may be."  *Pacific Life Insurance Company v. Spurgeon*, 319 F.Supp.2d 1108, 1115 (C.D. Cal. 2004) (citing *Mattel*, 354 F.3d at 867).

Thus, after accounting for general jurisdiction and the three prongs of specific jurisdiction, the Court finds that it does not have personal jurisdiction over Bessamaire.

Having concluded that this Court does not have personal jurisdiction over this case, the Court declines to address the change of venue motion and dismisses this case without prejudice.  Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion to Strike Portions of Plaintiff's Brief and Declaration for Violations of Federal Rule of Evidence 408, **ECF No. 15**, is **GRANTED**.

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS ~ 18

1    2.  Defendant's Motion to Dismiss for Lack of Jurisdiction, **ECF No. 4**,

2        is **GRANTED**.

3    3.  This matter is **DISMISSED WITHOUT PREJUDICE.**

4    The District Court Executive is directed to enter this Order, provide copies

5  to counsel, enter Judgment, and **close the file** in this case.

6    **DATED** this 2nd day of May 2012.

7

8                                    _s/ Rosanna Malouf Peterson_
                                  ROSANNA MALOUF PETERSON
9                               Chief United States District Court Judge

10

11

12

13

14

15

16

17

18

19

20

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION
TO DISMISS ~ 19